IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ROBERT ROY GOFF,

                              Case No. 09-CV-237-ST

       Petitioner,

    v.                          FINDINGS AND RECOMMENDATION

BRIAN BELLEQUE, Superintendent
Oregon State Penitentiary,

       Respondent.

      Thomas J. Hester, Assistant Federal Public Defender
      101 S.W. Main Street, Suite 1700
      Portland, Oregon 97204

            Attorney for Petitioner

      John R. Kroger, Attorney General
      Jacqueline Kamins, Assistant Attorney General
      Department of Justice
      1162 Court Street NE
      Salem, Oregon 97310

            Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION

STEWART, Magistrate Judge:

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 in which he challenges the legality of his underlying state court convictions for Kidnapping, Burglary, Coercion, and Unlawful Use of a Weapon.  For the reasons that follow, the Petition for Writ of Habeas Corpus (docket #1) should be denied.

<u>**BACKGROUND**</u>

In February of 2005, petitioner assaulted his wife ("Farrell"), who escaped from the house with her children after petitioner fell asleep.  Following petitioner's arrest stemming from this incident, Farrell obtained a restraining order against him, installed a home alarm system, obtained several cans of pepper spray which she put on her key ring and in each bedroom dresser, and barricaded her double-locked front door with a chair.  Trial Transcript, pp. 227-29, 238-39, 252-53, 270-71, 435.

Despite these precautions, petitioner was able to force his way into the residence on March 24, 2005, while Farrell was letting her cats out through a sliding glass door, as was her morning routine.  *Id* at 273, 666-67.  Petitioner threatened her with a knife and forced her into the garage, telling her that if she screamed he would "slice [her] throat."  *Id* at 275. Petitioner insisted that the two were going to talk through their issues, threatening to "slit [Farrell] from end to end and gut [her] like a pig" if she didn't tell the truth.  *Id* at 282.  He then proceeded

to force Farrell into the bedroom to retrieve her cellphone, compelled her to call in sick to work, took her cellphone, and warned her that he would kill her if she tried to leave. *Id* at 273, 283-85, 291, 427, 666.

During this ordeal, Farrell attempted to signal to a neighbor out her bedroom window. Petitioner instructed her to shut the blinds and windows and told her and her youngest daughter, "Nobody's going to be leaving here unless they're in body bags." *Id* at 291. Farrell's daughter eventually created a distraction, and Farrell sprayed mace in petitioner's face, prompting him to begin assaulting Farrell. *Id* at 295-96. When petitioner realized Farrell's daughter had escaped, he immediately fled the house. *Id* at 297.

The next evening, petitioner attempted to commit suicide by slitting his own throat, but apparently changed his mind and called his brother and asked him for a ride to the hospital. *Id* at 579-80. Petitioner's brother called 9-1-1 seeking assistance and informed the operator that petitioner was wanted by the police in Clackamas County. *Id* at 580-81. Three uniformed police officers were dispatched to the scene, including Portland Police Officer Dennis Mako who had an FBI special agent riding with him. *Id* at 562. Dispatch advised Officer Mako that petitioner was wanted by the Clackamas County Sheriff's Department for a domestic violence-related incident that had occurred the night before. *Id* at 560.

3 - FINDINGS AND RECOMMENDATION

The officers handcuffed petitioner at gunpoint, read him his *Miranda* rights, and took him into custody before turning him over to an emergency medical team. *Id* at 108, 563. Petitioner was then transported to Emanuel Hospital. Officer Mako also traveled to Emanuel Hospital, apparently in his patrol vehicle, taking evidence with him to transfer to Clackamas County authorities who would be at the hospital. *Id* at 565.

Clackamas County Deputy Tony Killinger was dispatched to Emanuel Hospital where medical personnel informed him that petitioner was "on a two-physician hold and would not be released or be allowed to be released . . . until he was seen by a counselor." *Id* at 607. Clackamas County Detective Kim Timeus arrived at the hospital that night at 10:30 p.m. and was told by a mental health therapist that the hospital had placed a mental health hold on petitioner such that if he attempted to leave, they would prevent him from doing so. *Id* at 47-48. Detective Timeus left the hospital and returned the following morning at approximately 11:30 a.m. to interview petitioner. *Id* at 51, 618.

Detective Timeus found petitioner to be awake and alert, and his first question was "whether he should talk to a lawyer before he talked to [Timeus]." *Id* at 54. She "told him that that was a decision that he would need to make." *Id.* Petitioner apparently decided not to talk with a lawyer. Detective Timeus stayed at the hospital for roughly eight hours, during which she interviewed

4 - FINDINGS AND RECOMMENDATION

petitioner for approximately three and a half hours with some interruptions. *Id* at 618, 983. It is undisputed that Detective Timeus did not administer a *Miranda* warning. At the end of the interview, she stationed two deputies outside petitioner's door. *Id* at 618-19. When petitioner was released the following day at 2:00 p.m., Detective Timeus and a deputy formally arrested him. *Id* at 619-20.

Petitioner was charged with Kidnapping in the First Degree, Burglary in the First Degree, Coercion, two counts of Unlawful Use of a Weapon, two counts of Menacing, two counts of Fourth Degree Assault, and Strangulation. Respondent's Exhibit 102, pp. ER 1-3. A jury acquitted him of Strangulation and one count of Fourth Degree Assault, but convicted him on the remaining charges. Respondent's Exhibit 101. The trial court sentenced him to 90 months in prison on the Kidnapping conviction and ran all other sentences concurrently. *Id.*

Petitioner directly appealed his convictions, but the Oregon Court of Appeals affirmed the trial court without opinion, and the Oregon Supreme Court denied review. *State v. Goff*, 222 Or. App. 331, 194 P.3d 193, *rev. denied*, 345 Or. 415 (2008). Petitioner did not file for state post-conviction relief.

Petitioner filed this federal habeas corpus action on February 26, 2009, raising the following grounds for relief:

5 - FINDINGS AND RECOMMENDATION

Grounds One and Two:  Petitioner was denied due process when the trial court permitted the Kidnapping charge to go to the jury based on legally insufficient evidence;

Ground Three:  The trial court violated petitioner's Fifth and Fourteenth Amendment rights by admitting his pre-trial statements made without a *Miranda* warning; and

Ground Four:  Petitioner was the victim of an unconstitutional search and seizure pertaining to his truck.

Respondent asks the court to deny relief on the Petition because: (1) Ground Four fails to state a claim and is procedurally defaulted; and (2) Grounds One, Two and Three were correctly denied in a state court decision that is entitled to deference.

## FINDINGS

### I.  Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that

contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In such an instance, although the court independently reviews the record, it still lends deference to the state court's ultimate decision. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

## II.  **Grounds One and Two:  Sufficiency of the Evidence**

At trial, petitioner moved for a judgment of acquittal as to the Kidnapping charge following the State's presentation of the

evidence.   He  argued  that  the  prosecution  failed  to  offer
sufficient  evidence  from  which  a  jury  could  conclude  that  he
substantially  interfered  with  Farrell  in  order  to  subject  him  to
liability  for  Kidnapping  in  the  First  Degree.   Trial  Transcript,
pp.  707-08.   The  trial  court  entertained  arguments  regarding  the
Oregon  courts'  interpretation  of  Oregon's  Kidnapping  statute  and
determined  that  a  jury  could,  in  fact,  find  petitioner  guilty  from
the  evidence  received.   *Id* at  712-13.

When  reviewing  a  habeas  corpus  claim  based  on  insufficient
evidence,  "[t]he  relevant  question  is  whether,  after  viewing  the
evidence  in  the  light  most  favorable  to  the  prosecution,  *any*
rational  trier  of  fact  could  have  found  the  essential  elements  of
the  crime  beyond  a  reasonable  doubt."   *Jackson  v.  Virginia*,  443
U.S.  307,  319  (1979)  (emphasis  in  original).   When  the  record
supports  conflicting  inferences,  courts  must  presume  the  jury
resolved  the  conflicts  in  favor  of  the  prosecution.   *Id* at  326.

As  relevant  to  this  case,  Oregon's  Kidnapping  statute,
ORS  163.225,  requires   a  showing  that  the  criminal  defendant
substantially  interfered  with  the  victim's  liberty.   According  to
petitioner,  the  prosecution  needed  to  demonstrate  either
substantial  movement  of  Farrell  or  an  interference  with  her  liberty
for  a  substantial  period  of  time.   He  claims  that  the  prosecution
failed  to  prove  either  element.

"As finally enacted the [Oregon Kidnapping] law does not even require that there actually be a substantial interference with the victim's personal liberty; it is only necessary that the perpetrator have the '*intent* to interfere substantially' with the victim's personal liberty to make the malefactor guilty of kidnapping if he commits an act proscribed by ORS 163.225." *State v. Mejia*, 348 Or. 1, 10, 227 P.3d 1139 (2010) (quoting *State v. Garcia*, 288 Or. 413, 421, 605 P.2d 671 (1980)). Thus, the prosecution was only required to prove that petitioner intended to interfere substantially with Farrell's personal liberty, something which is abundantly clear from the facts. In fact, petitioner's actions went beyond intent, as he substantially interfered with Farrell's liberty when he forced her to call in sick to work and refused to allow her to leave her house unless she was in a "body bag."

While petitioner makes much of the fact that the detainment lasted a total of approximately 90 minutes, that is only because Farrell was able to escape.[1] In a strikingly similar case, the Oregon Supreme Court recently determined that a 90-minute detainment was sufficient to survive a motion for judgment of

---

[1] To the extent petitioner argues that the State failed to prove that Farrell was a "hostage" under the applicable statute, such a claim was not fairly presented to the state courts sufficient to preserve it for federal habeas corpus review. *See Rose v. Lundy*, 455 U.S. 509, 519 (1982) (requiring a habeas petitioner to present his claims to a state's highest court in order to preserve it for federal habeas review).

acquittal.  *Mejia*, 248 Or. at 12.  In *Mejia*, the defendant "moved the victim from her front doorway into her bedroom, took away her cellphone, stifled her screams, physically restrained her, pinned her down and choked her when she attempted to escape, all with the plausible intent to interfere with her liberty."  *Id.*  The victim's 90-minute detention in *Mejia* ended when the victim told the defendant "things I know that he's always been wanting to hear" and the captor voluntarily released the victim.  *Id* at 4.

The only material difference between *Mejia* and the case at bar is that the captor in *Mejia* allowed his victim to leave after 90 minutes, whereas Farrell would have been held longer had she not escaped after her 90-minute detention.  As this difference makes petitioner's case more compelling than *Mejia*, and as the facts of *Mejia* were sufficient to survive a motion for judgment of acquittal, the trial court did not err in denying petitioner's motion for a judgment of acquittal.  Accordingly, upon an independent review of the record, the state court decisions denying relief on this claim are neither contrary to, nor unreasonable applications of, clearly established federal law.

## III. **Ground Three:  Admission of Hospital Interview Statements**

Prior to petitioner's criminal trial, the court held a hearing on his motion to suppress the statements he made to Detective Timeus at the hospital.  Petitioner testified at that hearing that Detective Timeus represented herself to be a Clackamas County

10 - FINDINGS AND RECOMMENDATION

mental health employee. Trial Transcript, p. 98. He also
testified that the circumstances at the hospital made him feel as
though he was not free to leave. *Id* at 113. The trial court
denied the suppression motion as follows:

> Well, I have a completely different view
> of things in some respects, after the
> defendant testified. I think initially I was
> concerned about what I would call the totality
> of the circumstances at the hospital. And
> although I could not find that the defendant
> was in the custody of the Clackamas County
> Sheriff or law enforcement, it certainly
> seemed that the hospital had placed him in a
> custodial situation that only the hospital was
> responsible for at that point in time.
>
> I listened very carefully to the
> defendant's testimony, and I have to say that
> I didn't find him to be credible on the issue
> of him not knowing that Detective Timeus -- I
> think he contradicted himself in a very subtle
> way. But at one point, I was tending to
> believe that he wasn't sure what her role was.
>
> But the more he talked about what they
> talked about, the more I believed that he knew
> she was a law enforcement officer and that she
> was not there to give mental health therapy or
> treatment or any evaluative function that was
> going on with respect to the hospital side of
> things.
>
> The only thing that occurs to me, and I
> have no evidence of this because we don't know
> what medications he was on, and we don't know
> what his medical or mental health situation
> was from this particular hearing, would be
> that I guess I was thinking that maybe he was
> more loose-tongued or something because of
> where he was at emotionally and mentally or
> because of medication. But other than that, I
> think he totally understood that anything he
> said could be used against him if he was
> talking to a law enforcement person.

So the only question I had was did he
know Detective Timeus was that? And I think
he did. I think he gave me reason to
disbelieve him when he said, one, that he
asked Detective Timeus, "Do I need an
attorney?" I mean, that would be an odd
question to ask somebody who was a mental
health counselor. And two, when he recognized
that she was asking different questions, and
that's what prompted him to ask, "Do I need an
attorney?"

I . . . have no doubt in my mind that
Detective Timeus identified herself. But I
guess part of his original testimony led me to
believe that Mr. Goff may have been confused
about that. But the more he testified, the
more I -- I think he did understand what her
role was.

I guess the only issue, and maybe my
findings need to be clear about this, is that
yes, he was not free to go. But it wasn't
because of a law enforcement hold at the
moment he was talking to Detective Timeus.

Now, I believe that Detective Timeus or
some other law enforcement officer would have
arrested him because they did, in fact, arrest
him the moment the hospital released him. So
if that is considered custodial, then, you
know, that's the only legal issue for me at
this point.

\* \* \* \* \*

. . . what I understand the case law to
mean is that being in custody in a hospital
room, by hospital personnel, is not the same
as being in the custody of a law enforcement
agency such as Clackamas County Sheriff or
[Portland Police Bureau] or whoever.

So that's why I'm ruling as I do. And
I'm trying to be as clear as I can on the
record so that . . . if somebody up above or
down in Salem disagrees with me, they'll know
where I drew that line. So I understand that

12 - FINDINGS AND RECOMMENDATION

it may be reasonable minds could differ on
that, but in this particular case there was no
evidence, in my opinion, that the Clackamas
County Sheriff's Office or any law enforcement
agency had a hold on him at the time Detective
Timeus spoke to him.  And it was not until he
was released by the hospital mental health
hold that he was placed into custody of the --
of the sheriff.  So that's the reason I am
denying the motion.

*Id* at 116-19, 134-35.

It is clear from the foregoing that petitioner sought to suppress his statements to Detective Timeus on two bases: (1) she intentionally misled him about the nature of her position with the authorities; and (2) the custodial setting at the hospital necessitated a *Miranda* warning.  Because he did not present any evidence to the trial court pertaining to his arrest at gunpoint to the trial court as part of his suppression motion, that evidence cannot be considered during this habeas corpus review.  *See Holland v. Jackson*, 542 U.S. 649, 652 (2004) ("whether a state court's decision was unreasonable must be assessed in light of the record the court had before it").

The trial judge determined that petitioner was not credible with respect to his testimony that Detective Timeus claimed to be a mental health worker and explicitly found that she did, in fact, represent herself to be a police officer.  Petitioner has not overcome these factual findings by clear and convincing evidence as required by 28 U.S.C. § 2254(e)(1).  Accordingly, the only basis

13 - FINDINGS AND RECOMMENDATION

upon petitioner can rest his Fifth Amendment claim is upon the allegedly custodial setting at the hospital.

According to petitioner, the lengthy interview was custodial because, but for the medical hold, Detective Timeus would have arrested him if he attempted to leave. He also points to the fact that Detective Timeus did, in fact, arrest him as soon as he was released from the hospital. Thus, he contends, a reasonable person in these circumstances would have understood that he was not free to leave, such that he was constitutionally entitled to a *Miranda* warning.

Respondent, on the other hand, point to several factors showing that this was not a custodial situation. As the trial court found, a hospital hold, not a police hold, prevented petitioner from leaving the hospital. Trial Transcript, p. 118. In addition, the police did not accompany petitioner to the hospital or stand guard outside his room prior to or during Detective Timeus' interview. *Id* at 51, 95, 616-17. Moreover, a hospital employee was present during the interview, and petitioner was quite talkative. *Id* at 51-52, 54, 56, 100.

The Supreme Court has never held that an interviewing police officer must administer a *Miranda* warning while questioning an individual who is subject only to a medical detainer. The Ninth Circuit has addressed this issue and determined that hospitalization is not considered custodial such that police need

14 - FINDINGS AND RECOMMENDATION

not administer a *Miranda* warning in that situation.  *United States v. Martin*, 781 F.2d 671, 673 (9th Cir. 1985).

It is also noteworthy that during the suppression hearing, petitioner testified that he was given a *Miranda* warning when the police took him into custody the night before Detective Timeus's interview, and he understood from the warning that he need not talk with them at that point.  Trial Transcript, p. 108.  This was approximately 15 hours before Detective Timeus interviewed him.[2] Such warnings do not need to be re-administered within such a short period of time.  *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1128-29, *amended by* 416 F.3d 939 (9th Cir. 2005).

As the trial court noted, reasonable minds might differ on the *Miranda* issue, but given the circumstances of this case and the governing case law, the trial court's reasoned decision denying the motion to suppress on the basis that petitioner was subject only to a hospital hold was neither contrary to, nor an unreasonable application of, clearly established federal law.

## IV.  Ground Four:  Fourth Amendment Search and Seizure

Petitioner's search and seizure claim is not cognizable in a federal habeas corpus action because Oregon's state courts afford him the opportunity to litigate this claim.  *See Stone v. Powell*, 428 U.S. 465, 494 (1976) (where a state's courts allow a full and

---

[2]  The Portland Police had contact with petitioner at 9:00 p.m. on March 26, 2005, and Detective Timeus interviewed petitioner at 11:30 a.m. on March 27, 2005.  Trial Transcript, pp. 558, 51.

fair opportunity to litigate a search and seizure claim, it cannot constitute a basis for habeas corpus relief).  Accordingly, relief on this claim should be denied.

## RECOMMENDATION

For the reasons identified above, the Petition for Writ of Habeas Corpus (docket #1) should be DENIED.  The court should issue a Certificate of Appealability only as to petitioner's Ground Three *Miranda* claim, and deny a Certificate of Appealability as to his remaining claims on the basis that he has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due June 2, 2011.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation(s) will go under advisement.

DATED this 16th day of May, 2011.


s/ Janice M. Stewart

Janice M. Stewart
United States Magistrate Judge


16 - FINDINGS AND RECOMMENDATION